IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) ROSHELL MAYBERRY, | ) | **FILED** |
| Plaintiff, | ) | DEC 2 7 2022 |
| v. | ) CIV-22- | Mark C. McCartt, Clerk U.S. DISTRICT COURT |
| (1) TURN KEY HEALTH CLINICS, LLC | ) 22-CV-568-CVE-JFJ ) JURY TRIAL DEMANDED ) ATTORNEY LIEN CLAIMED | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Roshell Mayberry, and submits her Complaint against the Corporate Defendant: Turn Key Health Clinics, LLC, and alleges and states as follows:

### I. PARTIES

1. The Plaintiff in this matter, Roshell Mayberry (hereinafter "Plaintiff"), is an adult African American (Black) female, who, for all material times, was residing in Tulsa, Oklahoma, County of Tulsa. Plaintiff, at all times material hereto, until her constructive discharge in February 2022, was an employee of Defendant.

2. The Corporate Defendant, Turn Key Health Clinics, LLC, upon information and belief, is a corporation or entity doing business in Tulsa County, Oklahoma.

### II. JURISDICTION AND VENUE

Plaintiff seeks relief through her causes of action based on (1) Race (Black/African American) Discrimination in her employment with Defendant, which is in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended; and (2) 42 U.S.C §1981 for intentional Race Discrimination, including her constructive discharge.

Jurisdiction over Plaintiff's claims is vested in this Court under 42 U.S.C. § 2000e5(f), and 28 U.S.C. § 1331. All of the actions complained of occurred in Tulsa County, Oklahoma. Tulsa County is within the Northern District of the United States District Court of Oklahoma and venue is appropriate in this Court.

### III. PROCEDURE

Plaintiff filed her Charges of Discrimination with the Equal Employment Opportunity Commission, whereby an investigation ensued. Thereafter, the agency mailed Plaintiff her Right to Sue letter on or about September 26, 2022, entitling her to institute a civil action in the appropriate forum within ninety (90) days of the date of receipt of said notice. This action was initiated within the said ninety (90) days. Plaintiff has timely and properly exhausted her administrative remedies.

### IV. FACTS

1. Plaintiff hereby incorporates by reference each of the allegations contained in roman numerals 1 through 3, above.

2. On or about October 2020, Plaintiff began work as a Licensed Professional Counselor for Turn Key Health Clinics, LLC, and was physically stationed at the David L. Moss Criminal Justice Center in Tulsa, Oklahoma.

2

3. Plaintiff was qualified to perform her job duties and did so in a satisfactory manner. During her tenure with the company, Plaintiff consistently performed her job tasks well, and performed duties outside of her job description when needed.

4. From the outset of her employment with Defendant, Plaintiff was consistently subjected to severely offensive racially offensive statements and behaviors from co-workers, most of which came from fellow counselor and co-worker, Sara Hardy (White/Caucasian). For example, shortly after Plaintiff came to work for Defendant, Sara Hardy asked the Plaintiff about the number of vehicles Plaintiff owned. When Plaintiff explained to Sara Hardy that she had acquired two vehicles following her divorce, Hardy asked, "[w]as your husband a drug dealer? That's what most Black men do." Offended and caught off guard by the statement, Plaintiff explained that her ex-husband worked in the oil and gas industry. Similar comments continued to be uttered by Sara Hardy to Plaintiff for the duration of her employment with Defendant.

5. For purposes of Plaintiff's 42 U.S.C. §1981 claims, Defendant intentionally discriminated against Plaintiff, beginning as far back as approximately March 2021. For example, on one occasion, Plaintiff's co-worker, Sara Hardy (White/Caucasian), turned to her and said, "you're intimidating. Black women are aggressive. That's what Black men say about y'all." Although Plaintiff had begun to grow accustomed to enduring her co-worker's racist remarks, Plaintiff took great offense and reported the remark to Dr. Irvin (White/Caucasian), her direct manager.

3

Rather than addressing the issue, Dr. Irvin stated, "I'm used to it," implying that Plaintiff should also become "used to" her co-worker's stereotyping and discriminatory commentary.

6. Plaintiff's supervisor, Dr. Irvin, continued to ignore Plaintiff's complaints of intentional discrimination perpetrated by her co-worker, Sara Hardy, for the duration of her employment, including Sara's interference with Plaintiff's work tasks. Sara intentionally deleted Plaintiff's assignments from the employee task list routinely before task completion, so that Plaintiff would face discipline for marking the tasks as "completed" when they were not done. Plaintiff complained to Dr. Irvin about Sara's acts, but no corrective action was taken.

7. At another time, on or about June or July 2021, a jail security guard referred to an inmate as "colored" while speaking to Plaintiff and Sara Hardy. Plaintiff expressed to the security guard the insensitivity of the term "colored," and the guard then left Plaintiff's work area. After the guard's exit, Sara Hardy then stated to Plaintiff, "[w]ell Black people don't know if they want to be called Black, African American or colored. You people need to make up your minds." Plaintiff refused to respond to the offensive and inflammatory statement, and Ms. Hardy eventually concluded the dialogue. Plaintiff did not report the incident, as she had learned that no corrective action would be taken against Sara.

8. Growing weary of constantly enduring the Sara's severely demeaning and degrading racial remarks against Black people, Plaintiff eventually relocated her workspace to get away from Sara and began working in close proximity to her

4

new coworker, Rolanda Davis, also a Black Female in July 2021.

9. After the relocation, Plaintiff experienced an increase in Sara's harassing behavior, but more specifically with the interference with Plaintiff's work tasks. Plaintiff reported the behavior to Human Resources in September 2021, but nothing was done by Human Resources to address or correct the behavior.

10. Plaintiff also experienced disparities in the treatment of Plaintiff in comparison to White employees. Plaintiff is aware that Sara Hardy received an annual raise from Defendant via Dr. Irvin in July 2021. However, when Plaintiff's one year employment date occurred in October 2021, Dr. Irvin did not conduct her annual review or give Plaintiff an annual raise, despite Plaintiff's exemplary employment performance.

11. In December 2021, Plaintiff's co-worker, Rolanda Davis, transmitted an email to Human Resources on behalf of herself and Plaintiff, detailed the race-based harassment and maltreatment the two had endured since Plaintiff had relocated to Ms. Davis' work area. Ms. Davis was fired within one week of transmitting the email, causing Plaintiff to fear that her termination would be next.

12. Plaintiff, at the insistence of her medical care provider, went on medical leave due to the mental stress and anxiety she suffered at the hands of the Defendant's employees and agents shortly after Ms. Davis' termination.

13. Feeling left with no other option, Plaintiff resigned from her employment with Defendant in February 2022.

14. Credible witnesses will attest to the racially hostile environment and

discrimination that Plaintiff endured and have committed to testify on behalf of Plaintiff at Trial.

15.     Plaintiff brings the following causes of action:

### [COUNT ONE]
### [Title VII-Race Discrimination]

For her First Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through fifteen (15) as if fully restated herein, and further alleges and states:

16.     Defendant unlawfully discriminated and against Plaintiff, in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

17.     Plaintiff is Black/African American, and therefore a member of a protected class. Defendant knew of Plaintiff's protected class.

18.     While employed by Defendant, Plaintiff was subjected to different terms and conditions of employment and discriminated against because of her Race (Black/African American) by Defendant. Such adverse actions included but were not limited to: derogatory racial remarks; denial of promotion and raises; denial of her access to reporting complaints of discrimination by simply ignoring them; refusing to investigate her complaints of discrimination; and constructive discharge.

19.     Other similarly situated employees that were not of Plaintiff's protected class, were treated more favorably and were not subjected to the same or similar adverse treatment.

20. Defendant's reasons for Plaintiff's constructive discharge and its actions are mere pretext for unlawful discrimination.

21. Plaintiff lodged complaints of racial discrimination to her immediate supervisor and to Human Resources, however the same were ignored, no investigation ensued, and the wrongdoers were not subjected to any disciplinary action.

22. Defendant's actions were intentional, willful and in reckless disregard of Plaintiff's rights as protected by the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

23. Due to Defendant's unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of Title VII, including without limitation, back pay, front pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendant for such unlawful conduct.

### [COUNT TWO ]
### [Violation of 42 USC §1981]

For her Second Cause of Action, Plaintiff hereby adopts the allegations contained in numerical paragraphs one (1) through twenty-three (23) as if fully restated herein, and further alleges and states:

24. 42 U.S.C. §1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit

of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

25. 42 U.S.C. §1981 also prohibits retaliation for opposing discriminatory practices that the statute proscribes. *Cbocs West, Inc. v. Humphries*, 553 U.S. 442 (2008).

26. Plaintiff is Black/African American, and therefore a member of a protected class. Defendant knew of Plaintiff's protected class.

27. Defendant intended to discriminate against Plaintiff based on her Race of Black/African American.

28. The racial discrimination by Defendant, outlined at paragraphs 4 thorough 13, above, impaired the existing at-will employment contract between Plaintiff and Defendant. Therefore, Defendant should be deemed liable for Plaintiff's damages.

29. The constructive discharge by the Defendant impaired the existing at-will employment contract between Plaintiff and Defendant. Therefore, Defendant should be deemed liable for Plaintiff's damages.

30. During her employment, Plaintiff was subjected to different terms and conditions of employment and discriminated against because of her Race (Black/African American) by Defendant and agents of Defendant. Such adverse actions included but were not limited to: derogatory racial remarks; denial of recognition, promotion and pay increase; denial of her access to reporting

complaints of discrimination by simply ignoring them; refusing to investigate her complaints of discrimination; and constructive discharge.

31.     Due to Defendant's unlawful acts and conduct, Plaintiff has suffered harm and is entitled to damages. Accordingly, Plaintiff is entitled to all remedies to which a prevailing plaintiff is entitled for violations of 42 U.S.C. §1981, including without limitation, back pay, front pay, compensatory damages, punitive damages, costs and a reasonable attorney's fee against Defendant for such unlawful conduct.

**WHEREFORE**, Plaintiff prays that she be granted judgment in her favor and against the Defendant, on all of her claims and that this Court grant Plaintiff all available compensatory damages, back pay, front pay, loss of benefits, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED this 27th day of December 2022.**

Respectfully submitted,

s/Ge'Andra D. Johnson
Ge'Andra D. Johnson, OBA #32810
Green Johnson Mumina & D'Antonio
4101 Perimeter Center Drive, Suite 110
Oklahoma City, OK 73112
405-702-7228: Telephone
405-702-6898: Facsimile
**ATTORNEYS FOR PLAINTIFF
ROSHELL MAYBERRY**

JURY TRIAL REQUESTED
ATTORNEY LIEN CLAIMED